May it please the court, my name is John Veazey for the Appellate Dr. Laird. As a quick aside, as I'm sure the panel knows, I'm deaf, so if you cannot understand something I say, please don't be to stop me and ask me to repeat what I said. Now, the main issue, the basic issue before the court here is whether absolute judicial immunity for those claims under Title II of the ADA against state and local judges, especially in the context of the provisions of all CWAs and services. As a roadmap for the panel, I want to primarily address the official capacity exception and then the administrative executive and legislative function exception, and then move on to whether the panel should reconsider the Medina. So, as a bracket to my argument, I want to say that the philosophical rationales and the underlying logic of the judicial immunity and the exceptions that apply to it do not have to conflict with the public policy of Title II of the ADA. This is because judicial unjudicial independence by protected judges and their personal access, personal liability. This is why the official capacity exception works by the injunctive relief and attorney fee works and why the non-judicial function exception works. The ADA, the main idea behind it is the policy to place people with a disability on a level playing field with non-disabled people. Now, at judicial immunity, it's not a defense when a judge issued his official capacity in Kentucky versus Graham. That's being recognized as a distinction between the official capacity suits and the personal capacity suits. The reason is that personal capacity suits seek to impose a personal liability on government officials, and that means that they can only recover from their personal access. On the other hand, an official capacity suit is against the government entity that the official represents, and recovery can only be made from that government entity. Following Kentucky versus Graham, numerous circuits, including the Fifth Circuit and Carter versus Home and Farm, recognize that they're personal defenses and that there's a personal defense that they're only applicable when an official receives their individual capacities. For us, it implicitly recognizes that judicial Now, opposing counsel has raised Bodell to say that these cases in the Section 1983 context should not be extended to the Title II context. Bodell is a judge of judicial doctrine. That really has nothing to do with the official capacity exception in that Section 1983, which practically did the ADA Section 1983 authorized a suit against a person acting under Carter of a state law. Therefore, people who are acting under Carter of state law can ordinarily only be sued in their state. On the other hand, the ADA is a cover entity or an ad issue or a public entity with state and local governments and their official Fifth Circuit and the Carter versus Palm of about 2002 recognize that there is basically no equivalent Bodell doctrine under Title II. They can only sue because of the way the Title II is structured. They can only sue in an official capacity. I don't believe that means that Bodell doesn't have anything to do with the official capacity of a distinction in that the underlying logic of the official exception should also apply here. For the Circuit Livingston v. Dice as well as McHale v. State of Indiana, which was a disrecorded decision, they both extended the official capacity of the exception to the ADA context. Here, we are McNaughton, and they are in reality suing the justice of the piece for warrant district 3 of the appearance of East Baton Rouge by Senator Larry Spencer. He represents the office. And with regard to the public policy concern that judicial and his personal assets are not at risk here. Also, if I may ask you a question, since we're talking about the actions of the justice of the piece, is there any supervisory body or court that an aggrieved person could seek redress? One of the reasons we have immunity, aside from the one you just mentioned, for judicial actions is because we expect that litigants would take the issue to a court of appeal or some other type of tribunal that would have some supervisory jurisdiction. Was there any attempt in this case or is there any remedy that could have been sought by the plaintiff in this case to apply? Here at this court, as you know, we have the mandate process where you can go and try to have the judge's judicial actions rectified by a supervisory court. Can you comment on that? Does that exist? And if so, was it done in this case by this plaintiff? As the plaintiff, she did not appeal the eviction decision. And of course, she also did not appeal the justice of the piece being served. Denial, you know, with regard to that underlying proceeding. Now, I will say that, there has been no case that I could find where the court dealt with much less reversed and remanded on the basis of a title two violation. Also, there's no term, prudence, or whether supervisory risk could be used for that. Also, in the specific context of an eviction proceeding, which is a summary proceeding, now this is highly fact specific, but as a summary proceeding, you only have 24 hours to appeal, which did not get done. But she could have, I guess in theory, the plaintiff could have in that 24 hour period you just mentioned, gone to on appeal to say that her hearing, her eviction hearing was not fair in the sense that she could not hear a portion of the, or maybe even all of the proceedings. And so therefore, she couldn't adequately participate in something as particularly as an eviction proceeding. Is that correct? It is. It is correct. You know, but someone could certainly try that and see what happens. There just is a deterrent prudence right down on that. Okay. It seems like to me, this is analogous to not having an interpreter for someone who you could appeal and say that the person was denied due process or various other theories because the person could not understand the proceedings against her. Is that a fair analogy? Well, it is analogous in some ways, but the ADA does have, the ADA is a slightly, it is a different context than foreign language interpreters, unless a state extends a protection for people who speak other foreign languages. There could be general due process arguments made, but there's no explicit protection for them. I have not looked in a while, but my recollection is the ADA is very specific. It does apply expressly to courts, does it not? It does. It applies to all public entities, which are defined as all leaders of state and local governments and their officials. And does it address who pays the cost? Yes, it does. The implementing regulation for the Department of Justice say that, that they make clear that it is the responsibility of the public entity to provide the accommodation to a person with a disability if it's requested. So your lawsuit is basically against an arm of the state? Yes, it is. We actually initially included the state in the suit. However, that was a file to be dismissed early on, because after the state filed a motion to dismiss, it became apparent that the state has legislation that actually disclaims the liability for asserted state official, including justices of the peace and under the circumstances included, the state can indeed do that. Either way, does the panel have any further questions on the official capacity exception? Okay, I will move on to the legislative and administrative function exception. This comes from Forrester, which basically holds that the acts performed by judges outside the traditional judicial assessment of the merits of a case are not judicial acts protected by judicial immunity. And Forrester sets up a two-part functional test. The first part is to examine the nature of the function that are requested to an official or a class of official. The second part is to examine the effect that the non-application of immunity may have on this function. Now, with regard to the nature of the function, immunity is justified by the function that protects, not the nature of the function, and the indicator that it may not be protected by judicial immunity. Your time has expired. You have saved some time for rebuttal. Mr. St. John. Good morning, your honors. May it please the court, Joseph Scott St. John, Louisiana Department of Justice for Appellee Judge Spencer. Before I begin, Judge King, the Attorney General asked me to extend his condolences to you on your loss. Thank you. Thank you. The appellant alleges that in a small claims case for eviction, she filed a written motion for real-time translation or an oral interpreter, albeit without disclosing the nature of her disability, then renewed that motion with a verbal objection during a hearing. Judge Spencer accommodated the appellant by providing written notes about the proceeding, a form of accommodation that is expressly contemplated by the regulations implementing the ADA at 28 CFR 35.104. Appellant believes that was inadequate, but instead of merely appealing Judge Spencer's ruling, which she did in fact do, and which provided her with a de novo proceeding in the 19th Judicial District Court, the appellant did the one thing the law does not allow. She sued Judge Spencer. The district court correctly found that suit barred by judicial immunity. At page 22 of her brief in this court, the appellant concedes that judicial immunity bars claims against Judge Spencer in his individual capacity, but she tries to overcome that by naming Judge Spencer in his official capacity and by seeking prospective relief. In the process, the appellant concedes that this panel would need to extend existing law and modify factors adopted by this court in 1972, endorsed by the Supreme Court in 1978, and repeatedly applied by prior panels. She does not argue those precedents were unequivocally overruled by the Supreme Court as required for this panel to overrule or depart from prior precedent. I'd like to turn first to the judicial capacity question. Judicial immunity applies only when a judge acts in his judicial capacity, and the appellant is arguing that, in part, that an accommodation decision is not in a judicial capacity. Whether an act is in a judicial capacity is determined at a very high level. In Morella's, the direction to bring a person in the court before the judge. In Molina, issuing a sentence. In Ballard, ordering an arrest and a payment of money judgment. And in Duvall, the Ninth Circuit case, that's fairly on point, Judge Reinhart found that an accommodation decision resulted from a motion, which is something that a judge, a district court does every day, dozens of times a day, ruling on a motion that is very clearly a judicial act. The appellate invites a split with three other circuits on this issue, the Ninth Circuit and Duvall, the Eleventh Circuit and the DOV Thorpe, and in preparing for argument, we found a Sixth Circuit case, Lloyd v. Doherty, 2018 Westlaw 658-4288, all finding that an accommodation decision is a judicial act. The appellant tries to overcome that problem, relying on an unpublished Fourth Circuit decision. Geis is very narrow. Geis held that the district court, in that case, failed to analyze a request for injunctive and declaratory relief under Pulliam, a Supreme Court case. Of course, Geis predates the 1996 Federal Courts Improvement Act, in which Congress superseded Pulliam by statute. The appellant also tries to apply the official capacity versus individual capacity distinction that arises in the 1983 context. As Mr. Veazey acknowledged, that's derivative of the statutory language for person. A person who deprives someone of civil rights under color of law is liable, and the Supreme Court has found that as a pleading device, a decision maker for an entity can be named in his official capacity, where the reality is the real party in interest is the political entity. The idea of limiting defenses to those available to the political entity thus makes sense in an official capacity suit, but the distinction breaks down This court in Molina found absolute judicial immunity applied, where a judge was named in his official capacity and individually without discussing the capacity, and likewise the Supreme Court in Waco. The appellant next tries to circumvent the bar on lawsuits against judges in a couple of manners. First, with an attorney fee claim, but that's absolutely barred by section 309A of the Federal Courts Improvement Act, 110 statute 3847 at 3853, which is now codified as a note to 28 U.S. Code 2412. The appellant also relies on Pulliam, which found that at least in the 1983 context, judicial immunity does not bar prospective and declaratory relief, but Pulliam emphasized that the requirements for an ordinary injunction, an inadequate remedy at law, a serious risk of irreparable harm, and of course article 3 standing, severely curtail the availability of prospective relief. This court and other courts have repeatedly relied on the narrow aspect of Pulliam, the lack of imminent non-speculative harm to dismiss for lack of standing or affirm dismissal for lack of standing lawsuits against judges. Is it your position that state courts do not have to comply with the ADA? No, your honor. The, our position is that here the judge Spencer did comply with the ADA. He did provide an accommodation, an accommodation hypothetically. What if a state court does not comply with the ADA? What is the remedy? An appeal, an appeal. The, the appellant had the right to It was case 672637 in the 19th Judicial District Court. And if she was unhappy with that result, she could have taken the appeal further up. What kind of accommodation did she receive in the DeNovo hearing? That is not in the record, your honor. And in reviewing the record in the DeNovo hearing, I did not see any, she, I did not see any discussion of accommodation. She raised the her disability and the, the particular nature of the accommodation provided below by judge Spencer, but I did not see anything in the written record of that case regarding any accommodation in the 19th JDC. Counselor, you said that she did argue in the 19th JDC, she did argue the unfairness of the inability to participate because of her disability? Your honor, I, it appears she was proceeding pro se. And what I'm comfortable saying is that she raised concern with the, the proceeding below and her hearing disability. You know, we're happy to provide, to supplement the record. It would be judicially noticeable if the court desires to see the written record of the proceedings in the 19th JDC. Which do incorporate the written record from the justice of the peace court. What, what remedy would a court might say, we're, you know, the, it would, you should have gotten the accommodation, but it's not going to affect the outcome of your eviction. But what remedy do, do citizens have to make sure that the courts do comply with the ADA? Your honor, looking back to the, the root for, for these standing cases of Shavey Littleton, the Supreme court said there were a number of, of adequate remedies at law. When a citizen is harmed by a judge, that was a judicial immunity case. They can seek an appeal, which is an adequate remedy at law. They can go to the, to a judicial conduct commission because of a lack of fairness in a proceeding toward a citizen can raise judicial conduct issues. And the Supreme court found that those were adequate remedies that would preclude, preclude an injunction. And so that, that would be fully adequate here. She could, could raise the conduct issue, judge Spencer's conduct, or take the appeal. She took the appeal. She could have done both. Would she get attorney's fees in a judicial conduct complaint? I do not believe so, your honor. But she won't, she should not get attorney's fees here either under the 1996 act. It's an absolute bar to an award of attorney's fees by a federal court against a judge. Okay. Explain to me how a state can insulate itself from liability under the ADA. Your honor, the state is it, the ADA provides liability for against a state in certain circumstances, as interpreted by the Supreme court in Tennessee v. Lane or against a political subdivision. The question is, where does that liability lie? And under this court's precedence, that's determined under state law. Under Louisiana law, a justice of the peace is not a, an arm of the state. He is a, a political subdivision and really a political subdivision in his own right. Each justice of the peace is separately elected, basically a one man political subdivision. And Louisiana has, through Louisiana law, has said that the justice of the pieces are just not part of the state. So there's no sovereign immunity. Correct. Your honor, the, the appellant originally sued the state of Louisiana, which moved to dismiss on the basis of sovereign immunity and the, the, the, the lack of judge Spencer being a, an arm of the state under title two, whether sovereign immunity bars a, a lawsuit against the state is determined. The waiver of 11, 11th amendment sovereign immunity under Tennessee applies only if the ADA claim resin raises constitutional issues. So it's not the pure statute, a pure statutory claim. Your honors, we would ask the court to find that absolute judicial immunity applies to judge Spencer, regardless of his capacity. And to follow this court's precedence in Bauer and Ballard and decline to reach the, the issue of perspective or declaratory relief due to lack of pleading. Your honor, Chief Judge Owen, one note on your, your, your question about who is responsible. The, the active complaint showed, made allegations against the state of Louisiana as responsible for judge Spencer. Once the dismissal, once the state moved to dismiss, the appellant never amended her complaint. So it's unclear who the responsible entity would be. There's judge Spencer in his official capacity, but there are no allegations identifying the entity that he purports to represent or that he would represent. And we run into the problem of a justice of the peace being essentially a one man judicial, a one man entity. If there are no further questions, I'll yield the remainder of my time. Thank you. Mr. Regan. Okay. Well, as to that last item that my colleague expressed with regard to the entity at issue here, I would, I would just refer back to what I said in my initial argument that, again, with the, with the state move to dismiss, and that reassures the issue more thoroughly. It just became apparent that the state has, has actually disclaimed the liability for acts of certain state official, including the justice of the peace, the found president of the Fifth Circuit said that states can, can do that. So it seems that the only entity that could be sued here is the justice of the peace. But once we dismiss, we, but the parents of, of, of, of East Baton Rouge, I would also like to express adverse authority with regard to, in, in other circuits, with regard to non, to non, to non, non-judicial acts. They can be distinguished either on the facts or their reasoning, or both with, with regard to default. The Ninth Circuit did say that the judge, he, he did not deal with the accommodation request from the start that was initially made to the court's ADA coordinator, and the court seemed to think that, that, that that was important. They did find that there was an issue of material fact with regard to whether the ADA administrator could be liable because of the possibility that this should be acted in an, in an, in an administrative capacity. And I think that the distinction that the court made between her and the judge kind of ran up against the that it is the nature of the function issue, not the, not the nature of the actor. But with regard to the First Circuit's Citipede case, the, the board of examiner was expressing the issue of, of, of, of accommodation, the instant matter before them. It was not going to be an underlying matter, like with what had already occurred. Did you want me to finish that sentence? Yes, please finish your sentence. Okay, thank you. With, with regard to both names, if there's, in the context, that would be with regard to, to a request for auxiliary, auxiliary aids and services with regard to an underlying proceeding, whereas Citipede, the board, the board of examiner, that was the main question before them. And that's all that I wanted to say to, to, to distinguish Citipede. Thank you, counsel. We, we had your arguments. We appreciate it. Okay.